United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10                    IN THE UNITED STATES DISTRICT COURT

11              FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

13  SONIA BAREKZAI,                         No. C 05-4695 CW

14          Plaintiff,                      ORDER DENYING
                                            PLAINTIFF'S AND
15      v.                                  DEFENDANT'S
                                            MOTIONS FOR
16  JO ANNE B. BARNHART,                    SUMMARY JUDGMENT,
    Commissioner of Social Security,        AND GRANTING
17                                          PLAINTIFF'S
            Defendant.                      MOTION TO REMAND
18                                          FOR FURTHER
                                            PROCEEDINGS
19  _____/

20

21      Plaintiff Sonia Barekzai moves for summary judgment or, in the

22  alternative, for remand.  Defendant Jo Anne Barnhart in her

23  capacity as Commissioner of the Social Security Administration

24  (SSA) opposes the motion and cross-moves for summary judgment.

25  Having considered all of the papers filed by the parties, the Court

26  denies the motions for summary judgment, and grants Plaintiff's

27  motion to remand.

28

**United States District Court**
For the Northern District of California

PROCEDURAL HISTORY

On March 14, 2003, Plaintiff filed an application for supplemental security income benefits (SSI) under Title XVI of the Social Security Act, alleging disability as of that day. (Hearing Transcript (Tr.) at 15). Plaintiff's application and subsequent request for review were denied. (Tr. at 24 and 30). Plaintiff filed a timely request for a hearing before an administrative law judge (ALJ). (Tr. at 35).

On January 20, 2005, a hearing was held before an ALJ. Plaintiff appeared, and was represented by counsel. (Tr. at 15). On March 16, 2005, the ALJ issued an opinion finding that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. at 15-21). On September 23, 2005, Plaintiff's request for administrative review by the Appeals Council was denied. (Tr. at 5). Plaintiff then initiated the instant action for judicial review under 42 U.S.C. § 1383(c), seeking an award of benefits or, in the alternative, remand to the Commissioner for further proceedings.

STATEMENT OF FACTS

I. Education and Work History

At the hearing before the ALJ, Plaintiff testified, through a translator, to the following facts. Plaintiff was born on August 2, 1959 in Afghanistan. (Tr. at 209). After finishing high school, she completed one extra year of school there, which enabled her to become a teacher. (Tr. at 209). She taught for approximately six months before leaving Afghanistan. (Tr. at 211). At the end of 1985, she moved to the United States (Tr. at 209),

2

and has not worked in this country  (Tr. at 212).  She cannot speak English.  (Tr. at 212).

II. Medical History

A. Dr. Hsu

Plaintiff began seeing Dr. Hwei-Jung Hsu, M.D., her treating physician, on October 20, 2002.  (Tr. at 117-130 and 173-178).

Dr. Hsu's notes of Plaintiff's reported symptoms include back pain (Tr. at 127), chest pain, (id.,) pain in both heels and feet (Tr. at 120), pain in her back and right leg (Tr. at 174), pain in both ankles (Tr. at 129), low back pain (Tr. at 176) and neck pain (Tr. at 178).

Dr. Hsu diagnosed Plaintiff with a lumbar disc problem (Tr. at 125 and 129), lumbar strain (Tr. at 126), arthritis (id.,) lumber disc disease (Tr. at 129), plantar fasciitis (id.,) a boil on the lower abdomen (Tr. at 130), and tendonitis in the left arm (id.). Dr. Hsu prescribed medication regularly for Plaintiff's physical problems.  (Tr. at 174).  Dr. Hsu also administered acupuncture, vitamin shots and B-complex shots.  (Tr. at 215).

In addition, Dr. Hsu diagnosed Plaintiff as suffering from depression.  (Tr. at 174).  He prescribed various medications that are typically used for depression or anxiety, Zoloft[1] on January 27, 2003, (Tr. at 127), and Valium[2] on July 1, 2004, (Tr. at 174).

---

[1]Zoloft is an anti-depressant.  Physician's Desk Reference, 2581 (60th ed. 2006).

[2]Valium is indicated for management of anxiety disorders or for the short-term relief of symptoms of anxiety.  Id. at 2822.

United States District Court
For the Northern District of California

B. Dr. Johnston

On June 2, 2003, Dr. Bruce Johnston, M.D., a psychiatrist, performed a psychiatric consultative examination of Plaintiff, apparently at the request of the SSA.

Dr. Johnston observed that Plaintiff complained about physical problems, suffered from chronic and disabling somatic pain and experienced inconsistent sleep and appetite. (Tr. at 134). He noted that Plaintiff's upbringing in Afghanistan was substantially different from living in the United States, making a shift toward a working life in this country highly unlikely. (Tr. at 134).

He found that Plaintiff had no cognitive or memory defects, and no psychological abnormalities. Id. He diagnosed Plaintiff with chronic pain pattern, moderate depression, and post-traumatic stress reaction. Id.

C. State Agency Physicians

On June 10, 2003, State agency physicians reviewed Plaintiff's record and determined the following mental residual functional capacity (RFC).[3] First, Plaintiff was moderately limited in her ability to understand, remember and carry out detailed instructions, in her ability to maintain attention and concentration for extended periods and in her ability to interact appropriately with the general public. (Tr. at 136-137). Plaintiff was diagnosed as having affective disorders, anxiety-

_____

[3] A residual functional capacity (RFC) assessment "measures the claimant's capacity to engage in basic work activities . . ." This means "what the claimant can still do despite his or her impairment." Baxter v. Sullivan, 923 F.2d 1391, 1395 (9th Cir. 1991).

United States District Court
For the Northern District of California

related disorders (Tr. at 140), sleep disturbance (Tr. at 143), moderate depression (Tr. at 143) and elements of post-traumatic stress disorder (PTSD) (Tr. at 145).  As a result, Plaintiff was mildly functionally limited in her activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace.  (Tr. at 150).

D. Dr. Rahmany

On November 18, 2004, Dr. Khalil Rahmany, Ph.D., Licensed Clinical Psychologist, wrote a psychological evaluation of Plaintiff.  He explained that Plaintiff was referred to his clinic by Dr. Hsu for evaluation and treatment of depression.  (Tr. at 169).

In his evaluation, Dr. Rahmany wrote that Plaintiff reported experiencing insomnia, anhedonia[4] and preoccupation with internal stimuli, nightmares and distressing dreams, memory impairment, psychomotor retardation, irritable mood and frequent crying spells, inability to concentrate, low frustration tolerance and anger outbursts, feelings of hopelessness and helplessness, and passive suicidal ideation.  Id.  He also noted that her symptoms of depression had worsened during the previous two years.  Id.

His diagnosis was major depressive disorder that was recurrent, severe and without psychotic features.  (Tr. at 171). He opined that Plaintiff's problems were chronic and long-standing. Id.

---

[4]Anhedonia is defined as the inability to experience pleasure. The Random House Dictionary of the English Language, 58 (1979).

United States District Court
For the Northern District of California

5

III. Hearing Before Administrative Law Judge

      A. Plaintiff's Testimony at Hearing

     Plaintiff testified that, as of the hearing date, she saw psychologist Dr. Rahmany every month for approximately the previous year for therapy and treatment of emotional problems.  (Tr. at 215).  She slept only intermittently through the night because of her pain and nightmares.  (Tr. at 215 and 216).  She kept to herself during the daytime.  (Tr. at 216).  She sometimes slept a bit during the day, watched television and read.  She could take a whole day to read one or two chapters in a book because she could only read for three to four minutes at a time.  (Tr. at 216).  Any activities involving bending, pushing, pulling or walking made her pain worse.  (Tr. at 217).  She could not walk five blocks.  (Tr. at 217).  She could not stand for long periods.  (Tr. at 217 and 218).  Sitting in one place made her back pain increase; to avoid this, she needed to stand up and move around periodically.  (Tr. at 218).

     Plaintiff saw Dr. Hsu every month for medication, acupuncture, vitamin shots and B-complex shots.  (Tr. at 215).  She was unemployed because she experienced extreme pain that shot up and down between her legs and her back, and she had severe arthritis and  pain in her fingers.  (Tr. at 213).  She did limited household work.  (Tr. at 214).  She took medication for her pain daily.  (Tr. at 214).  Six years prior to the administrative hearing, she had bone corrective surgery on one of her legs.  (Tr. at 214).  After surgery, she suffered from a pinched nerve in her leg.  Because of the pinched nerve and her back pain, Plaintiff needed the

6

assistance of a cane for walking.  (Tr. at 214).

    B. RFC and Vocational Expert's Testimony

    The ALJ asked the Vocational Expert (VE), Mr. Malcolm
Brodzinsky, appearing on behalf of the SSA, whether a hypothetical
claimant such as Plaintiff could perform any unskilled work.
First, the hypothetical claimant had no past relevant work
experience, had not worked in the United States for the past
fifteen years, had worked as a teacher in Afghanistan more than
fifteen years ago, had thirteen years of education in Afghanistan,
spoke no English, only Farsi, and was forty-three years old when
she asserted her disability began.  Second, because of orthopedic
issues, the individual was unable to perform the full range of work
at all exertional levels, but could perform light work and
occasionally stoop or crouch.  Third, this individual needed to use
a single-pointed cane for walking long distances and on uneven
terrain.  The ALJ excluded any mental limitations in the
hypothetical claimant.  (Tr. at 218-220).

    Mr. Brodzinsky responded that the hypothetical claimant
described by the ALJ could perform several unskilled jobs.  (Tr. at
218-220).  Mr. Brodzinsky concluded that a person with almost all
of the hypothetical claimant's physical limitations could perform
the tasks of a small products assembler, which is an unskilled
position with an SVP[5] of 2 and light physical demands.  He

_____

    [5]SVP refers to specific vocational preparation level.  Using
skill level definitions in 20 CFR §§ 404.1568 and 416.968, an SVP
of 1 or 2 corresponds to unskilled work which needs little or no
judgment to do simple duties that can be learned on the job in a
short period of time.

United States District Court
For the Northern District of California

testified that there are approximately 3,000 of these positions in the San Francisco Bay area, and approximately 250,000 such positions nationally.  (Tr. at 220).  He added that many individuals who do this work do not speak English, and can be shown how to perform the job by demonstration.  Id.  Mr. Brodzinsky added that a person with the hypothetical claimant's limitations could perform several sedentary jobs, such as a jewelry stone setter, of which between 750 and 1,000 positions exist in the San Francisco Bay Area, and approximately 30,000 nationwide, (Tr. at 221) and semiconductor bonder in electronics, of which  approximately 4,000 positions exist in the San Francisco Bay Area, and approximately 150,000 nationwide.  Id.  Counsel for Plaintiff asked Mr. Brodzinsky whether the claimant's need to use a cane for walking would affect the number of unskilled light work jobs available. Mr. Brodzinsky responded that it would affect approximately seventy-five percent of all available light work and approximately ten percent of all available sedentary work.  (Tr. at 221 and 222).

V. Administrative Law Judge's Decision

     In his decision denying Plaintiff's claim, the ALJ applied the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 14, 2003.  (Tr. at 16).

     At step two, the ALJ found that Plaintiff had physical impairments that were severe under the Social Security Regulations. Id.  However, the ALJ also found that Plaintiff's assertion of a mental impairment was not supported by objective evidence or by her

United States District Court
For the Northern District of California

8

**United States District Court**
For the Northern District of California

treatment history, and that her daily activities did not seem limited by mental impairments.  In support of his finding of no severe mental impairment, the ALJ cited Plaintiff's written statement, noting that her daily activities included shopping, some cooking, cleaning, laundry and ironing.  Moreover, the ALJ observed that these activities appeared largely normal, and mostly limited by physical problems.  (Tr. at 17).  The ALJ gave greater weight to the opinion of Dr. Johnston, a psychiatrist who evaluated Plaintiff once, than to that of Dr. Rahmany, her treating psychologist, in finding that Plaintiff's difficulties with employment were largely due to cultural differences rather than to medically determinable mental impairments.  Id.

The ALJ did not address the opinions of the state agency physicians.  Id.

At step three, the ALJ found that none of Plaintiff's impairments either individually or in combination met or equaled in severity and duration the criteria of any listed impairment.  Id.

At step four, the ALJ found that Plaintiff had no relevant past work experience; and that she had the residual functional capacity to perform a reduced level of light work.  (Tr. at 20). He cited the Social Security Regulations in noting that light work involves standing or walking for several hours per day, lifting up to ten pounds frequently and lifting up to twenty pounds occasionally.  Id.

Finally, at step five, the ALJ stated that the Vocational Expert testified that Plaintiff's need for a cane would eliminate only twenty-five to seventy-five percent of all stone setter jobs.

He concluded, though, that the total number of jobs Plaintiff could perform was still significant.  (Tr. at 20).  Specifically, he found that Plaintiff could perform the jobs of small products assembler and electronics bonder as well as stone setter.  (Tr. at 21).  Therefore, the ALJ concluded that Plaintiff was not disabled.

LEGAL STANDARD

I.   Overturning a Denial of Benefits

A court cannot set aside a denial of benefits unless the ALJ's findings are based upon legal error or are not supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Orteza v. Shalala, 50 F. 3d 748, 749 (9th Cir. 1995).  It is more than a scintilla but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

To determine whether substantial evidence exists to support the ALJ's decision, a court reviews the record as a whole, not just the evidence supporting the decision of the ALJ.  Walker v. Matthews, 546 F.2d 814, 818 (9th Cir. 1976).  A court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  In short, a court must weigh the evidence that supports the ALJ's conclusions and that which does not.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

If there is substantial evidence to support the decision of the ALJ, it is well-settled that the decision must be upheld even

United States District Court
For the Northern District of California

when there is evidence on the other side, <u>Hall v. Sec'y of Health,</u> <u>Educ. & Welfare</u>, 602 F.2d 1372, 1374 (9th Cir. 1979), or when the evidence is susceptible to more than one rational interpretation, <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1453 (9th Cir. 1984).  If supported by substantial evidence, the findings of the ALJ as to any fact will be conclusive.  42 U.S.C. § 405(g); <u>Vidal v. Harris</u>, 637 F.2d 710, 712 (9th Cir. 1981).

II.  Establishing Disability Under the Social Security Act

       To determine whether a plaintiff is disabled within the meaning of the Social Security Act, the Social Security Regulations set out a five-step sequential process.  <u>Reddick v. Chater</u>, 157 F.3d 715, 721 (9th Cir. 1998); 20 C.F.R. § 416.920.  The burden of proof is on the plaintiff in steps one through four.  <u>Sanchez v.</u> <u>Sec'y of Health & Human Servs.</u>, 812 F.2d 509, 511 (9th Cir. 1987). In step one, the claimant must show that she or he is not currently engaged in substantial gainful activity.  20 C.F.R. § 416.920(b). In step two, the claimant must show that he or she has a "medically severe impairment or combination of impairments" that significantly limit his or her ability to work.  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. § 416.920(c).  If the claimant does not, he or she is not disabled.  Otherwise, the process continues to step three for a determination of whether the impairment meets or equals a "listed" impairment which the regulations acknowledge to be so severe as to preclude substantial gainful activity. <u>Yuckert v. Bowen</u>, 482 U.S. 137, 141 (1987); 20 C.F.R. § 416.920(d). If this requirement is met, the claimant is conclusively presumed disabled; if not, the evaluation proceeds to step four.  At step

11

four, it must be determined whether the claimant can still perform "past relevant work."  Yuckert, 482 U.S. at 141; 20 C.F.R. § 416.920(e).  If the claimant can perform such work, he or she is not disabled.  If the claimant meets the burden of establishing an inability to perform prior work, the burden of proof shifts to the Commissioner for step five.  At step five, the Commissioner must show that the claimant can perform other substantial gainful work that exists in the national economy.  Yuckert, 482 U.S. at 141; 20 C.F.R. § 416.920(f).

DISCUSSION

Plaintiff asserts that, at step two of the sequential process, the ALJ's finding that she had no mental impairment was improper because it was contradicted by the medical evidence.  Plaintiff also argues that the ALJ failed to assess the severity of the combined impact of all of her physical and mental impairments on her residual functional capacity.  Finally, she claims that she automatically qualifies for disability because she fits that definition under the Medical-Vocational Guidelines.  She argues that the ALJ erroneously relied upon a mischaracterization of the testimony of the VE to find that she could perform other jobs existing in significant numbers in the national economy and thus was not disabled.

I. ALJ's Step Two Finding of No Mental Impairment

Plaintiff claims that the ALJ's conclusion that she had no mental impairment is not supported by the record.

The ALJ must give more weight to the opinions of treating medical sources than to either examining or non-examining medical

12

sources, because treating sources usually provide "a detailed, longitudinal picture" of a claimant's medical impairments. 20 C.F.R. § 404.1527(d)(2); Rodriguez v. Bowen, 876 F.2d 759, 761 (9th Cir. 1989).   Treating source means the claimant's physician, psychologist, or other acceptable medical source who provides, or has provided, the claimant with medical treatment or evaluation and who has, or who has had, an ongoing treatment relationship with the claimant.   20 C.F.R. § 404.1502.   In order to reject the uncontradicted opinion of a treating source, the ALJ must set forth clear and convincing reasons for doing so.   Baxter v. Sullivan, 923 F.2d 1391 (9th Cir. 1991).   Where there are contradictions between the opinion of the treating source and others, the ALJ must detail specific and legitimate reasons supported by substantial evidence to reject the opinion of the treating source.   Lester v. Chater, 81 F.2d 821, 830 (9th Cir. 1995).

A. Dr. Rahmany's and Dr. Johnson's Opinions

Plaintiff points out that the ALJ purported to accept the opinion of consultative psychiatrist Dr. Johnston over the opinion of treating psychologist Dr. Rahmany.   Plaintiff argues that the ALJ erred because both doctors diagnosed Plaintiff with depression and concluded that Plaintiff was unable to engage in gainful employment.

The ALJ relied upon Dr. Johnston's opinion that Plaintiff's difficulties with employment would be largely due to cultural differences, not to medically determinable impairments.   The ALJ stated that both practitioners examined Plaintiff only once, and that Dr. Johnston examined her more extensively than Dr. Rahmany

13

did. (Tr. at 17).

Contrary to the ALJ's finding, Plaintiff testified that she had seen Dr. Rahmany for psychological counseling every month for approximately one year. (Tr. at 215). The ALJ did not make a finding that this testimony was not credible, and no evidence contradicted it. Furthermore, Plaintiff's testimony was supported by Dr. Rahmany's report that Plaintiff was referred to him for evaluation and ongoing treatment. Therefore, the ALJ's conclusion that Plaintiff saw Dr. Rahmany only once is not supported by the evidence and it was improper for the ALJ to reject his opinion for this reason.

Further, Plaintiff is correct that both Dr. Rahmany and Dr. Johnston diagnosed Plaintiff with depression, although the doctors' opinions differed in that Dr. Johnston characterized Plaintiff's depression as moderate (Tr. at 134) and Dr. Rahmany described her as having a major depressive disorder that was recurrent and severe (Tr. at 171). In addition, Dr. Johnston diagnosed Plaintiff with symptoms of post-traumatic stress reaction (Tr. at 134), which is consistent with Dr. Rahmany's opinion.

Based on the foregoing analysis, the Court finds that the ALJ did not meet his burden of setting forth specific, legitimate reasons for giving Dr. Johnston's opinion more weight than that of Dr. Rahmany, or for not giving Dr. Rahmany's opinion special weight as treating physician.

B. Dr. Hsu's Opinion

Plaintiff also points out that Dr. Hsu, her treating physician, diagnosed her with depression.

14

Evidence in the record indicates that Dr. Hsu diagnosed Plaintiff with depression on more than one occasion.  On January 27, 2003, Dr. Hsu prescribed Zoloft to Plaintiff, (Tr. at 127), and on July 1, 2004, he prescribed Valium, (Tr. at 174).  As explained previously, Zoloft is commonly used as an anti-depressant, and Valium is commonly used to manage anxiety disorders.  On September 8, 2004, Dr. Hsu listed depression as a diagnosis in his progress notes for Plaintiff.  (Tr. at 174).  On November 18, 2004, Dr. Rahmany wrote in his report that "Mrs. Barekzai was referred to the clinic by her family physician for evaluation and subsequent treatment of depression."  (Tr. at 169).

The ALJ did not account for the fact that Dr. Hsu, Plaintiff's treating doctor, diagnosed and treated her for depression, but he concluded that she was not being treated for depression.  The ALJ's comment at the hearing that Dr. Hsu's prescription of Zoloft served to calm Plaintiff down is insufficient to discount that Dr. Hsu was treating her for depression.  (Tr. at 16).  The ALJ did not account for the Valium that Dr. Hsu prescribed for Plaintiff, which also indicates that he was treating her on an ongoing basis for depression, or for the fact that Dr. Hsu  referred her to a psychologist for further treatment.  (Tr. at 169).  Therefore, the ALJ improperly disregarded Dr. Hsu's opinion, and erred in his finding that Plaintiff did not seek or receive treatment for depression.

C. Opinions of State Agency Physicians

Plaintiff argues the ALJ recognized that the state agency physicians concluded that she suffered from depression, but

United States District Court
For the Northern District of California

rejected their conclusions with inadequate reasoning.

The state agency physicians reviewed Plaintiff's record on June 10, 2003, before Dr. Rahmany's examination of her on November 18, 2004.  Nevertheless, even without Dr. Rahmany's opinion, the state agency doctors realized that Plaintiff suffered from depression.

In light of the record as a whole, the ALJ failed to set forth specific, legitimate reasons for disregarding the opinions of Dr. Hsu, Dr. Rahmany, Dr. Johnston and the state agency physicians.

II. Step 3, 4 and 5 Analysis Regarding Combination of Impairments

Plaintiff argues that the ALJ failed to assess the severity of the combined impact of all of her impairments, including depression, on her functioning.

In spite of the errors in his determination that Plaintiff had no mental impairment, the ALJ found that she suffered from severe physical impairments at step two and thus proceeded to step three. However, because he had erroneously found at step two that Plaintiff had no mental impairment, he failed to weigh her combination of mental and physical impairments at step three to determine whether this combination met or equaled a listed impairment.  Furthermore, the ALJ continued this error by failing to include Plaintiff's mental disability in his RFC so that he did not examine whether her mental impairment significantly limited her work abilities.  Finally, the error infected the ALJ's hypothetical to the VE, which did not include the effect Plaintiff's mental impairment, individually or in combination with other impairments, would have on her work abilities.

16

**United States District Court**
For the Northern District of California

III. Vocational Expert's Testimony and Physical Impairment

Plaintiff claims that the ALJ misinterpreted the testimony of the VE and, as a result, concluded erroneously that someone with Plaintiff's physical RFC could perform a significant number of jobs in the national economy.

Work which exists in the national economy means work which exists in significant numbers either in the region where the claimant lives or in several regions of the country.  42 U.S.C. § 423(2)(D)(2)(A).  Where over 2,300 sedentary jobs exist in a region and 64,000 exist nationwide, such jobs exist in significant numbers within the region so as to meet the requirements of 42 U.S.C. § 423(2)(D)(2)(A).  <u>Moncada v. Chater</u>, 60 F.3d 521, 524 (9th Cir. 1995).

In answering the ALJ's hypothetical question about what jobs a person with Plaintiff's physical limitations could perform, the VE responded that the hypothetical claimant could perform one unskilled job, small products assembler, which required light physical demands, of which there were approximately 250,000 in the national economy, and 3,000 in the San Francisco Bay area.  The VE added that Plaintiff could perform two sedentary jobs.  The first job, semiconductor bonder, comprises approximately 150,000 positions nationally and 4,000 positions in the San Francisco Bay area.  The second job, jewelry stone setter, comprises an estimated total of 30,000 positions in the national economy, and between 750 and 1,000 positions in the San Francisco Bay area.  (Tr. at 220 and 221).

After the VE answered the ALJ's hypothetical question,

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Plaintiff's counsel asked the VE whether Plaintiff's need to use a cane for walking would affect the availability of unskilled light work jobs.  Id.  The VE responded that such a limitation would reduce by seventy-five percent all available light work positions and by approximately ten percent all sedentary positions.  (Tr. at 222).  In his opinion, however, the ALJ stated that the VE testified that Plaintiff's need to walk with a cane would erode only twenty-five percent to seventy-five percent of the total number of stone setter jobs available.  (Tr. at 20).  This was incorrect.

Nonetheless, even with the cane limitation, the VE's testimony establishes that Plaintiff could perform approximately 224,500 existing jobs nationwide, including 62,500 light work jobs and 162,000 sedentary jobs.  Moreover, Plaintiff could perform between 5,025 and 5,250 total jobs in the San Francisco Bay area, including 750 light work jobs, and between 4,275 and 4,500 sedentary jobs.

This is an adequate number of sedentary jobs in the economy.  See Moncada, 60 F.3d at 524.  However, if Plaintiff has a mental impairment, as discussed above, the cumulative effect of that along with her physical impairment may alter the VE's conclusion on remand.

IV. Automatic Finding of Disability

Plaintiff points out that the Medical Vocational Guidelines would direct a finding of disability if she were limited to sedentary work.  Defendant responds that Plaintiff's RFC allowed her to perform a reduced range of light work, so that the sedentary grid rules do not apply.

The Medical-Vocational Guidelines, 20 C.F.R. part 404, subpart P, Appendix 2 Section 201.00(h)(1) provide, in part, that

> a finding of "disabled" is warranted for individuals age 45-49 who: (i) Are restricted to sedentary work, (ii) Are unskilled or have no transferable skills, (iii) Have no past relevant work or can no longer perform past relevant work, and (iv) Are unable to communicate in English, or are able to speak and understand English but are unable to read or write in English.

Plaintiff meets requirements (ii)-(iv) for disability under § 201.00(h)(i). As discussed above, Plaintiff could perform few available light work jobs, and this conclusion, too, could be altered by consideration of the cumulative effect of her mental impairment. On remand, the ALJ should consider whether Plaintiff qualifies as disabled under the Medical Vocational Guidelines.

V.   Reversal or Remand

The decision whether to remand a case or simply to award benefits is within the discretion of the court. Swenson v. Sullivan, 876 F.2d 683, 689 (9th Cir. 1989). The "general rule [is] that the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings." Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000)(citation omitted).

The Court exercises its discretion to remand so that the ALJ can consider in the first instance the issues raised in this order.

CONCLUSION

For the foregoing reasons, Plaintiff's motion for remand for proceedings consistent with this opinion is granted. Plaintiff's and Defendant's motions for summary judgment are denied. The ALJ should address at step two whether Plaintiff suffers from a severe mental impairment, and at step three whether Plaintiff's

impairments either individually or in combination meet or equal in severity and duration the criteria of any listed impairment.  If not, the ALJ should then re-address steps four and five. Furthermore, the ALJ must consider whether Plaintiff meets the requirements for disability under Medical Vocational Guidelines, 20 C.F.R. part 404, subpart P, Appendix 2 § 201.00(h)(1).

Judgment shall enter accordingly.  Plaintiff shall recover her cost of suit from Defendant.  The clerk shall close the file.

IT IS SO ORDERED.

Dated:  3/20/07

CLAUDIA WILKEN
United States District Judge